## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**No. 14-mj-01079-KLM**

**IN THE MATTER OF THE EXTRADITION OF:**

**LIBOR MIKULIK**
_____

### ORDER DENYING CERTIFICATE OF AUTHORIZATION TO EXTRADITE
_____

This matter came before the Court on August 19, 2014 for a determination, pursuant to the Extradition Treaty between the United States of America and Czechoslovakia dated July 2, 1925 (the "Original Treaty"), the Extradition Supplementary Treaty Between the United States and Czechoslovakia dated April 29, 1935 (the "Supplementary Treaty") and the Second Supplementary Treaty on Extradition between the United States of America and the Czech Republic dated May 16, 2006 (the "Second Supplementary Treaty"), of whether the evidence of criminality presented by the Czech Republic is "sufficient to sustain the charge [against Libor Mikulik] under the provisions of the proper treaty or convention." 18 U.S.C. § 3184.  I find, based on the following, that the evidence is not sufficient and therefore deny the government's request for a certificate of authorization to extradict.

### I. Background

**A.     Legal Authority for Proceeding**

It is the prerogative of the executive branch of the United States government to conduct foreign affairs.  *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 828-829 (11th Cir. 1993).  In an extradition proceeding, the Article III branch's role is limited.  *Id.* The Court is to determine the sufficiency of the request to extradite under the applicable treaty provisions, *id.*; 18 U.S.C. §§ 3184, 3186, which is accomplished through an

extradition hearing pursuant to 18 U.S.C. § 3184.

**B.     Nature of Hearing**

Based on my review of the applicable case law authority, the purpose of the hearing

in this matter was to determine whether the equivalent of probable cause is established.

*See, e.g., Peters v. Egnor*, 888 F.2d 713, 717 (10th Cir. 1989).  The United States has

provided authenticated documentary evidence relating to the Czech Republic's allegations

and judgments against Mr. Mikulik.  At the hearing, both the United States and Mr. Mikulik

presented argument.

## II. Analysis

As noted above, the role of the Court in the extradition process is limited.  *Hilton v.*

*Kerry*, 754 F.3d 79, 83 (1st Cir. 2014) ("The United States judiciary has a limited role in

extradition proceedings.").  As the Second Circuit Court of Appeals has explained:

> At an extradition hearing, the "judicial officer's inquiry is confined to the
> following: whether a valid treaty exists; whether the crime charged is covered
> by the relevant treaty; and whether the evidence marshaled in support of the
> complaint for extradition is sufficient under the applicable standard of proof."
> *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir.2000).

*Skaftouros v. United States*, 667 F.3d 144, 154-55 (2d Cir. 2011); *cf. Smith v. United*

*States*, 82 F.App'x 964, 965 (10th Cir. 1996) ("The scope of habeas review of a magistrate

judge's extradition order under a treaty with a foreign country is limited to determining

whether the magistrate judge has jurisdiction, whether the offense charged is within the

treaty, and, by somewhat liberal construction, whether there was any evidence warranting

finding that there was a reasonable ground to believe the accused was guilty.").  Pursuant

to 18 U.S.C. §§ 3184 and 3190, in an extradition proceeding,

> [t]he Government must establish that: (1) there is a valid and effective extradition treaty between the United States and the country requesting extradition; (2) under the provisions of said treaty the fugitive may be extradited for the crime charged; (3) the evidence supporting the extradition complaint conforms to the applicable standards mandated by the treaty and/or the laws of the United States; and (4) the evidence supports a finding of probable cause to believe that a crime has been committed and that the person to be extradited committed it.

*In re Extradition of Harusha*, No. 07-x-51072, 2008 WL 1701428, at *2 (E.D. Mich. April 9, 2008). As the Supreme Court of the United States made clear in 1925, the only inquiry to be made is "whether the [Court] had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *see also Ornelas v. Ruiz*, 161 U.S. 502 (1896). Accordingly, the Court examines its jurisdiction, the existence of a treaty, whether the crimes alleged are extraditable under the treaty at issue, and whether probable cause exists.

## A.     Authority of the Judicial Officer

The statute, 18 U.S.C. §3184, authorizes a broad class of judicial officers to hear extradition cases. Federal judges are authorized by the statute to hear and decide extradition cases; the statute expressly provides that magistrate judges may do so. In the District of Colorado, Local Rule 57.1(B)(8) authorizes magistrate judges to "exercise powers and duties necessary for extraditing fugitives." D.C.COLO.LCrR 57.1(B)(8).

3

**B.    Jurisdiction Over the Fugitive**

The Court has jurisdiction over a fugitive found within its jurisdictional boundaries. 18 U.S.C. § 3184 (stating that the court "may, upon complaint made under oath, charging any person found within [its] jurisdiction . . . issue [its] warrant for the apprehension of the person so charged").  *Pettit v. Walshe*, 194 U.S. 205, 219 (1904).  Generally speaking, if the fugitive is before the Court, the Court has personal jurisdiction.  *In re Pazienza*, 619 F. Supp. 611 (S.D.N.Y. 1985).

**C.    Treaty in Full Force and Effect**

The extradition statute, 18 U.S.C. § 3184, limits extradition to instances in which a treaty is in force between the requesting state and the requested state.  *See, e.g., Argento v. Horn*, 241 F.2d 258 (6th Cir. 1957).   The Original Treaty was signed in Prague on July 19, 1925.  Ratifications of the Original Treaty by the United States and Czechoslovakia were exchanged on March 29, 1926 and the Original Treaty entered into force on that day. [#1] at 26-35; [#1-1] at 1. The Supplementary Treaty was signed in Washington, D.C. on April 29, 1935, and ratifications were exchanged on August 28, 1935.  The Supplementary Treaty took effect on August 30, 1935. [#1] at 22-25.

In the Agreement on Extradition between the United States and the European Union dated June 25, 2003 (the "Extradition Agreement"), the United States and the Czech Republic agreed to amend the Original Treaty and Supplementary Treaty.  Accordingly, the Second Supplementary Treaty between the United States and the Czech Republic was signed in Prague on May 16, 2006, and took effect on the same date as the Extradition Agreement.  [#1] at 12-21.    That date was February 1, 2010.    *See http://ec.europa.eu/world/agreements/prepareCreateTreatiesWorkspace/treatiesGenera*

4

*IData.do?step=0&redirect=true&treatyId=5461.*

In this case, the government has provided the Declaration of an Attorney Advisor in the Office of the Legal Advisor for the Department of State attesting that "the relevant and applicable treaty provisions in full force and effect between the United States and the Czech Republic are found in [the Original Treaty, the Supplementary Treaty and the Second Supplementary Treaty]." *See Gov't Ex. 1, Decl. of Elizabeth M. Kiingi* [#1] at 5. This determination by the Department of State is entitled to deference from this Court. *Terlinden, v. Ames*, 184 U.S. 270, 288 (1902); *Kasternova v. United States*, 365 F.3d 980, 985-987 (11th Cir. 2004); *United States ex rel Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997); *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996).

Mr. Mikulik argues that the Complaint's reliance on the extradition provisions of the Original Treaty and the Supplementary Treaty is improper, because those treaties were between the United States and a country which no longer exists, Czechoslovakia. [#20] at 4, n. 3. He further contends that the Supplementary Treaty "was only in force for ten years" by its terms, and the government must establish that it "was in effect when the request for extradition was made on September 14, 2006." *Id.* However, by its terms the Original Treaty was to remain in effect for ten years and to continue in effect until one year after either party gave notice of its termination. [#1] at 35, Art. XIV. There is no evidence that either party ever gave notice of termination of the Original Treaty. Moreover, the United States and the Czech Republic agreed to amend the earlier treaties by entry into the Second Supplementary Treaty. [#1] at 12 para. 1. To the extent that Mr. Mikulik intends to argue that the Czech Republic had no authority to do so, he fails to cite any legal basis for his contention. Finally, the Complaint's failure to refer to the Second Supplementary

Treaty is not fatal to the extradition request, as the Declaration of the Attorney-Advisor in the Office of Legal Adviser for the Department of State which accompanied the request makes clear that "the relevant and applicable treaty provisions in full force and effect between the United States and the Czech Republic" include the Second Supplementary Treaty. [#1] at 5, para. 3.  The Complaint's omission of a reference to the most recent and currently effective treaty is not a fatal error.  *Cf. In re Extradition of Gohir*, No. 2:14-mj-00314-CWH, 2014 WL 2123402, at *6 (D. Nev. May 21, 2014) ("Extradition treaties create a binding obligation on the United States to surrender fugitives to its treaty partners once the fugitives are found to be extraditable.") (citing *Wright v. Henkel*, 190 U.S. 40, 62 (1903)); *Ordinola v. Hackman*, 478 F.3d 588, 607 (4th Cir. 2007) ("Courts [ ] assume a deferential posture when it comes to determining the existence or continuing validity of an extradition treaty on the grounds that such questions are essentially political.")*; Kastnerova v. United States*, 365 F.3d 980, 986 (11th Cir. 2004) (noting that determinations regarding whether a treaty has lapsed should be left to the executive branch); *In re Extradition of Bilanovic*, 2008 WL 5111846, at *5-*6 (W.D. Mich. Dec. 3, 2008) (noting that determination of whether a treaty is applicable to an extradition proceeding is a political question and stating that "[t]he fact that a country has invoked an extradition treaty in the case at bar is evidence of its implied adoption of the treaty.").

In addition, as Mr. Mikulik himself acknowledges, "the most recent treaty entered into force on February 1, 2010," and provides that "Articles I through 4 of this Supplementary Treaty shall be applicable to requests made prior to such entry into force."  *Id.* at 3-4; [#1] at 20, Art. 14, para. 2. The Czech Republic requested extradition of Mr. Mikulik on September 14, 2006, prior to entry into force of the Second Supplementary Treaty. [#1] at

9.  Therefore, according to the provision cited above, Articles 1 through 4 of the Second Supplementary Treaty are applicable to the request to extradite Mr. Mikulik.

Mr. Mikulik nevertheless argues that the language of the Second Supplementary Treaty can only be construed to mean that it does not apply to *any* requests for extradition which were made before it took effect.  Article 14 of the Second Supplementary Treaty reads as follows:

1.      This Supplementary Treaty shall apply to offenses committed before as well as after it enters into force.

2.      This Supplementary Treaty shall not apply to requests for extradition made prior to its entry into force, except that Articles 1 through 4 of this Supplementary Treaty shall be applicable to requests made prior to such entry into force.

According to Mr. Mikulik, if this article "is read to mean that the treaty applies to extradition requests made before the treaty's effective date, the entire section becomes a non sequitur. It would mean the treaty does <u>not</u> apply to requests for extradition on extradictable offenses (defined in Article II) made before it was in effect, but it applies to such requests made for extradictable offenses." [#20] at 5.

The Court is not persuaded that the language of the Second Supplementary Treaty is as nonsensical as Mr. Mikulik suggests.  Section 2 of Article 14 may be read to mean that *only* Articles 1 through 4 apply to requests for extradition made before the document became effective; otherwise (i.e., as to Articles 5 through 17) it does not apply to requests for extradition made before its effective date.  Of course, as to offenses committed before and after the Second Supplementary Treaty became effective (as addressed in Article 14, paragraph 1) and requests for extradition made after its applicable date (which are not mentioned in the exclusionary language of Article 14, paragraph 2 at all), the entirety of the

7

Second Supplementary Treaty is applicable.  This interpretation is consistent with the plain meaning of the terms used in Article 14 and harmonizes their meaning in a constructive way.  *See In re the Extradition of Martinez*, 2014 WL 199903, at *3 (M.D. Tenn. Jan. 17, 2014) ("[T]he terms of an extradition treaty should be liberally construed so as to effect the intention of the parties to secure the open and reciprocal surrender of fugitives to be tried for extraditable offenses.").  Other courts asked to address the validity and applicability of the Original Treaty and Supplementary Treaty have found that they are valid and applicable.  *See. e.g., Kastnerova v. United States*, 365 F.3d 980, 985-987 (11th Cir. 2004); *United States v. Peterka*, 307 F.Supp.2d 1344, 1346 n.1 (M.D. Fla. 2003); *In re Extradition of Platko*, 213 F.Supp.2d 1229, 1233-34 (S.D. Cal. 2002).

**D.    Crimes Extraditable Under the Treaty and Probable Cause**

The Treaty provides for the return of fugitives "charged with, or . . . convicted of any of the crimes or offenses specified in Article II of the present Treaty. . . ." *Second Supplementary Treaty*, Art. 1 [#1] at 12; *Original Treaty*, Art. 1 [#1] at 28.  Therefore, the government must offer evidence that Mr. Mikulik is charged with or convicted of a crime extradictable under the Treaty.  In addition, "[t]he Court, as a matter of proper review scope, limits its inquiry to the charges specified in the extradition complaint."  *In re Extradition of Azra Basic*, 5:11-MJ-5002-REW, 2012 WL 3067466, at *5 (E.D. Ky. July 27, 2012).  As the *Basic* court noted, "the extradition statute clearly limits the inquiry to the charge in the extradition complaint." *Id.*[1]  Pursuant to 18 U.S.C. § 3184, the Court issued

---

[1] The United States concedes that it is not seeking to extradite Mr. Mikulik for any incidents other than those listed in the Complaint.  *Government's Response to Order to Show Cause* [#38] at 2 ("The complaint in this case limits what Mikulik will be tried for in the CR and that is the fraud offense.").

a warrant [#3] based on the "complaint made under oath, *charging* any person found within [the judge's] jurisdiction, with having committed . . . any of the crimes provided for by such treaty or convention . . . ." 18 U.S.C. § 3184 (emphasis added).  The extradition statute makes clear that the Court then reviews the evidence submitted in support of the Complaint and makes a determination of whether the evidence presented is "sufficient to sustain *the charge* under the provisions of the proper treaty or convention. . . ." *Id.* (emphasis added). Therefore, as in *Basic*, the Court must assess the "sufficiency of evidence *only* as to those charges." *Basic*, 2012 WL 3067466, at *5.  To do otherwise "would not comply with the statute or provide fair notice to [Mr. Mikulik] about the subject matter of the extradition inquiry." *Id.*

Here, the United States, on behalf of the Czech Republic, has filed a Complaint stating that the United States seeks to extradite Mr. Mikulik based on a 1998 *in absentia* conviction for two alleged incidents of fraud that occurred in 1993 and 1994. *Complaint* [#1] ¶¶ 5-6.  With regard to the two alleged incidents of fraud for which the government seeks extradition, the government provides the February 5, 1998 *in absentia* Judgment (the "Judgment"), [#1-1] at 23-24 and [#1-2] at 1-2, and an Arrest Warrant ("the Warrant"), [#1-1] at 11-15, dated November 15, 2004.

An *in absentia* conviction is evidence of a charge of a crime; it is not treated as a conviction.  *See In re the Extradition of Nunez-Garrido*, 829 F.Supp.2d 1277, 1287-88 (S.D. Fla. 2011); *United States v. Fernandez-Morris*, 99 F.Supp.2d 1358, 1365 (S.D. Fla. 1999). As a result, the United States must offer sufficient evidence to establish probable cause that a crime was committed and that the person before the court committed that crime. *Quintanilla v. United States*, 582 F.App'x 412, 415 (5th Cir. 2014) ("Certification of eligibility

for extradition requires a finding of probable cause that the accused committed the charged offense."); *Sindona v. Grant*, 619 F.2d 167, 175-76 (2nd Cir. 1980).  "Probable cause is the existence of a reasonable ground to believe the accused guilty of the crime." *Id.* (internal quotation marks and citations omitted))

The documents submitted by the Czech Republic establish that in 1998, Mr. Mikulik was convicted *in absentia* of the crimes of fraud (punishable by § 250, paragraphs 1 and 3 of the Criminal Law of the Czech Republic) and embezzlement (punishable by § 248, paragraphs 1 and 3 of the Criminal Law of the Czech Republic).  In 2004, Mr. Mikulik was convicted *in absentia* of the crimes of "breaking the regulations for goods circulation" (punishable by § 124, paragraphs 1 and 2 of the Criminal Law of the Czech Republic) and forgery and alteration of a document (punishable by § 176, paragraphs 1 and 2 of the Criminal Law of the Czech Republic). [# 1-1] at 24; [# 1-2] at 15; [# 1-2] at 19.  According to the documents submitted by the Czech Republic, Mr. Mikulik was sentenced to serve three years in prison as a result of his 1998 *in absentia* convictions.  [#1-2] at 2.  At the time of his subsequent *in absentia* convictions in 2004, the previous sentence was considered by the court in arriving at what appears to be a sentence of seven years imprisonment as punishment for all offenses.  *See* [#1-3] at 1, 32.  However, the documents submitted by the United States on behalf of the Czech Republic also indicate that  Mr. Mikulik's 1998 convictions were "quashed."  [#1-1] at 12.

Mr. Mikulik argues that

"the only evidence to support that [the alleged fraud and embezzlement] occurred in 1993 and 1994 appears to be a judgment of conviction dated February 5, 1998, from the District Court Uherske Hradiste.  There are no affidavits or even unsworn statements by alleged victims or other witnesses, no investigative reports, or any other evidence traditionally relied on by

extradition magistrates to support a finding of probable cause."

*Memorandum of Law on Extradition* [#20] at 10.   Mr. Mikulik concludes that "there is no competent evidence to support a finding of probable cause to believe he committed the two offenses alleged in the [C]omplaint." *Id.* at 11.  He urges the Court to follow the reasoning of the court in *In the Matter of Extradition of Platko*, 213 F.Supp.2d 1229 (S.D. Cal. 2002), which held that "authentication of documents not themselves sworn does not suffice to establish a foundation for the factual content asserted in the documents," and thus probable cause was lacking.  *Id.* at 1238.

While on its face *Platko* is similar to the instant factual scenario, the legal conclusion reached in that case is readily distinguishable from this case.  In interpreting the extradition treaty between the United States and the Czech Republic, the *Platko* court denied the government's extradition request because the only evidence in support of the arrest warrant submitted in that case consisted of unsworn "summaries of statements that were purportedly made by accomplices, and several witnesses and victims."  *Id.*  The Court found these to be insufficient under the Treaty.  *Id.* 1238-41.  As the *Platko* court made clear, if an individual is only charged with a crime[2], the Original Treaty requires production of the arrest warrant and the supporting "deposition."  As the Original Treaty states:

> "If the fugitive criminal shall have been convicted of the crime or offense for which his extradition is asked, a copy of the sentence of the court before which such conviction took place, duly authenticated, shall be produced.  If, however, the fugitive is merely charged with [a] crime, a duly authenticated copy of the warrant of arrest in the country where the crime was committed, and of the deposition upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in the case."

---

[2]  As noted above, an *in absentia* conviction is treated as a charge.

11

*See Original Treaty, Art. XI* [#1] at 34-35.   In this case, the government submitted the Judgment in support of the Warrant in lieu of a "deposition."   While Mr. Mikulik maintains that this case is similar to *Platko* and that the lack of a "deposition" dictates that the Court find that there is no probable cause, the Court will not discount the validity of the Judgment entered by the Czech court as a suitable substitute for the "deposition" required by the Treaty.

A judgment signed by a foreign judge that includes a detailed recitation of the evidence on which it is based is sufficient to meet the Treaty's requirement of an authenticated deposition.  *See Haxhiaj v. Hackman*, 528 F.3d 282, 286 (4th Cir. 2008)*; In re Extradition of Zhenly Ye* Gon, 768 F.Supp.2d 69, 88-89 (D.D.C. 2011); *In re Extradition of Bilanovic*, No. 1:08-mj-74, 2008 WL 5111846, at *11 (W.D. Mich. Dec. 3, 2008).  Just as an Order or Judgment entered by this Court is a legally binding document that can prevent a party from later bringing a claim or even making an argument if it has been relied on by a court in reaching a decision, a judgment entered in a foreign court should be accorded the respect it deserves.  As the District Court for the District of Columbia explained, "[i]t is inconceivable that the signatory parties would intend that judicial findings sufficient in themselves in either country would somehow not be sufficient to warrant extradition from one to the other."  *Zhenly Ye Gon*, 768 F.Supp.2d at 88-89; *see also Bilanovic*, 2008 WL 5111846, at *11 ("the judicial findings are at least as persuasive as facts set forth in a prosecutor's affidavit, which is generally not supported by sworn testimony.").  Therefore, the Court finds that even though the Judgment is not a sworn deposition, it should be accorded the deference it deserves and the Court may consider it as supporting evidence

for the charge.

However, the Court's inquiry into probable cause does not end there.  Probable cause is not established merely by the fact that there has been an *in absentia* conviction.  Rather, in those cases, the Court must scrutinize the evidence carefully to determine at least a reasonable probability that the petitioner is guilty of the crime."  *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1366 (S.D. Fla. 1999)  (internal quotation marks and citation omitted)).  The government has made clear that the only crimes for which it seeks Mr. Mikulik's extradition are the 1993 and 1994 incidents.  *Government's Response to Order to Show Cause* [#38] at 2; *see also* Original Treaty, Art. IV.  With regard to those crimes (the 1993 and 1994 incidents), the evidence presented makes clear that the "verdict of sentence delivered by the District Court Uherské Hradiště of 5 February 1998 . . . was quashed and all other decisions following herewith as to the content were quashed [as] if they, considering the change, ceased to have effect."  [#1-1] at 12.  This statement, on its face, appears to mean that the Judgment, the only evidence offered in support of the Warrant, "ceased to have effect."

On March 17, 2015, the Court asked the parties to explain what effect, if any, the fact that the verdict was quashed has on Mr. Mikulik's extradictability.  *Order to Show Cause* [#35] at 1.  In it's initial Response, the government stated:

> The "quashed" language in Document 1-1, page 12, second paragraph refers to the fact that because Mikulik was convicted in the [Czech Republic] "in absentia," he is entitled to a new trial on his return to the [Czech Republic]. Thus the language is to be read to mean that he will not be facing sentencing on the 1998 conviction, but will instead "start from scratch." (Document 1, paragraph 4(e); Document 24, page 14).  That is not to say that the findings of the courts in the [Czech Republic] are insufficient or irrelevant to a probable cause finding for his extradition here, just that he is no longer deemed convicted in the [Czech Republic], and will be entitled to a new trial

when he is returned there.

*Government's Response to Order to Show Cause* [#38] at 2.  The government cited to no authority for these assertions and did not submit any supporting documents, such as an affidavit from a Czech judge or legal expert explaining the legal significance of the "quashing" of the Judgment.  Mr. Mikulik filed a Reply in which he argued that the plain meaning of the term "quashed" is "voided" or "declared invalid."  *Libor Mikulik's Reply Brief* [#39] at 5-6.  As he points out, the Warrant was translated by someone who attested to its accuracy and, therefore, the Czech words must correlate with the English words chosen.  *Translation Clause* [#1-1] at 16.  He also points out that the government offers no support for its statement that the word "quashed" merely means that Mr. Mikulik is entitled to a new trial.  *Libor Mikulik's Reply Brief* [#39] at 5.  The Court agrees.  Without any proof of what the term "quashed" means or its legal significance in the Czech Republic, the Court can only guess at its meaning.  In the absence of a factual or legal basis—or both—for the government's position on the meaning and effect of the "quashing" of the 1993 and 1994 convictions, it has failed to offer evidence of an extraditable "charge" as dictated by the Treaty.  *Platko*, 213 F.Supp.2d at 1241 (noting that the "prosecutor's conclusory opinion" was insufficient and that "the record lacks competent evidence from which this court can independently make a probable cause determination.").

In it's Response to Mr. Mikulik's Reply, the government argues that the quashing of his convictions is akin to a reversal of a criminal conviction in the United States, after which the defendant may nevertheless be retried.  It argues that "Mikulik's quashed convictions did not make the allegations disappear, just the verdicts, as is abundantly clear from the language from Doc. 1-1, p.12, quoted in Document 39 at page 5."  *Government's Response*

14

*to Libor Mikulik's Reply Brief (Document No. 39)* [#42] at 3.   However, the language relied on by the government not only refers to "the verdict of sentence" being "quashed," but also explicitly states that "all other decisions following herewith as to the content were quashed [as] if they, considering the change, ceased to have effect." [#1-1] at 12.   Although the meaning of "all other decisions following herewith as to the content were quashed [as] if they . . . ceased to have effect" is unclear, it is not impossible or even improbable that the language means that charges and/or the evidence supporting the *in absentia* convictions was stricken, such that they "ceased to have effect."   If this is the case, the Court cannot conclude that Mr. Mikulik was "charged with . . . crimes or offenses specified in . . . the Treaty" or that there is probable cause to believe he committed those crimes.

The government's analysis suggests that all that is necessary to extradict Mr. Mikulik is an indication of the Czech Republic's intent to prosecute him, but the Court construes the Treaty's and the statute's requirement of a "charge" differently.   If the government's position were correct, every mere request to extradict would be sufficient, whether charges were pending and evidence were proffered in support of the request or not.   As more than one Court has noted, the charging document may be analyzed "to the limited extent necessary to ensure the requirements of the federal extradition statute and the applicable extradition treaty have been satisfied."   *In the Matter of Extradition of Nezirovic*, Civil Action No. 7:12MC39, 2013 WL 5202420, at *14 (W.D. Va. Sept. 16, 2013) (citing *Skaftouros*, 667 F.3d at 156).

The Court is aware of the narrow scope of review in extradition proceedings, and takes very seriously its obligation to "avoid making determinations regarding foreign law." *In re Extradition of Robertson*, No. 11-MJ-0310 KJN, 2012 WL 5199152, at *10 (E.D. Cal.

Oct. 19, 2012). As we are often advised, in the extradition context, "form is not to be insisted upon beyond the requirements of safety and justice." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *see also Grin v. Shine*, 187 U.S. 181, 184-85 (1902) ("[W]here the proceeding is manifestly taken in good faith, a technical noncompliance with some formality of criminal procedure should not be allowed to stand in the way of a faithful discharge of our obligations."). Yet in this case, the government's showing of both the existence of a "charge" required by the Treaty and referenced in the Complaint, and any evidence in support of it, is fundamentally lacking. The government's bald assertions that a charge exists, evidence has not been stricken and the Czech Republic intends to re-try Mr. Mikulik on the basis of allegations first made more than twenty years ago is simply not enough.

### III.  Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED:**

1.  There being an insufficient showing of the existence of a charge and probable cause to support the statements in the Warrant, the present application of the Czech Republic to certify Mr. Mikulik for extradition is **denied without prejudice**; and

2.  Mr. Mikulik's bond is exonerated and the case shall be closed.

Dated this 31st day of July, 2015

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge